CHARLES M. PRESTON, as Receiver of THE NEW YORK BUILD-
ING-LOAN BANKING COMPANY, Respondent, *v.* WALTER S.
ROCKEY et al., Appellants.

1. BUILDING-LOAN AND BANKING ASSOCIATION — LIABILITY OF SHARE-
HOLDER OF INSOLVENT ASSOCIATION ON MORTGAGE GIVEN TO SECURE
LOAN THEREFROM AND PREMIUM THEREON.    Where, in an action brought
by the receiver of an insolvent building-loan banking association, incor-
porated under the laws of this state, to foreclose a mortgage upon prem-
ises owned by a shareholder of the association, it appears that the mort-
gage was given to secure the payment of a certain sum as principal —
which consisted of the amount of a prior mortgage upon the premises,
which the association agreed to retire, of the amount of moneys advanced
to the mortgagor and of a certain sum which he agreed to pay as a pre-
mium upon the loan — together with interest at the rate of six per cent
on such principal and the payment of taxes, insurance and dues, or install-
ments, on a certain number of shares of the capital stock of the associa-
tion subscribed for by the mortgagor, the par value of which, when
matured, would be equal to the principal sum secured by the mortgage,
which interest and dues were to be paid in monthly installments until the
maturity of the stock, with fines for arrears of dues; and it appears that
the association, several years after the execution of the mortgage, having
become insolvent, the receiver thereof instituted an action to foreclose the
mortgage for default in the payment of interest, the mortgagor being in
default, also, in the payment of dues and fines; the mortgagor is chargeable
with unpaid taxes and insurance and the interest thereon, with arrears of
interest at the rate of six per cent per annum on the total amount of the
bond and mortgage, together with the arrears of dues and the fines for
arrears of such dues, up to the time the receiver was appointed; and from
the time the receiver was appointed, when the association was no longer able
to carry out its contract with the mortgagor, the latter is chargeable only
with interest, at the rate of six per cent, upon the amount of cash actually
advanced to him and with interest, at the rate of five per cent, actually
paid by the association upon the underlying mortgage which it agreed to
pay and retire as part of the principal and consideration of the mortgage
in question.

2. SAME — RIGHTS AND LIABILITIES OF SHAREHOLDER IN SUCH ASSO-
CIATION — WHEN SHAREHOLDER NOT ENTITLED TO HAVE SUMS PAID
FOR DUES AND CHARGES ON ACCOUNT OF PREMIUMS CREDITED UPON
HIS MORTGAGE TO ASSOCIATION.    The mortgagor, being a shareholder of
the association, as well as a borrower therefrom, is subject to and bound
by its purposes and policies as evidenced by the statute under which
it was incorporated (L. 1851, ch. 122), and its articles of association and

by-laws; and, as such shareholder, is required to pay the dues and charges imposed, under and in pursuance of such articles and by-laws, for the purpose of accumulating a fund known as the "Maturity Fund," which would mature, or make worth par, the shares held by the mortgagor and others and which shares would be used, in the case of a borrower, to pay his indebtedness, and in the case of a non-borrower, to pay and retire his stock, therefore, the mortgagor is not entitled to be credited, upon the bond and mortgage, with any part of the sums paid by him or charged to him, for dues and interest on account of premiums, or with any part of the excess of one per cent paid by or charged to him, over and above the rate actually paid by the association upon the underlying mortgage, before the insolvency of the association; but he must get relief and credit therefor as a shareholder with the other shareholders.

3. Same — When Usury Not a Defense in Action to Foreclose Mortgage Given by Shareholder to Such Association. Where the provisions of the statute under which the association was incorporated expressly render fines, monthly payments and premiums innocuous under the statute prohibiting usury, and there is no proof of usury in the interest provisions of the contract, a defense that the bond and mortgage are void for usury is unsupported and untenable.

Preston v. *Rockey*, 110 App. Div. 920, affirmed.

(Argued April 4, 1906; decided May 15, 1906.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 12, 1906, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term in an action for the foreclosure of a mortgage.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles R. Hall* and *Frederick H. Kellogg* for appellants. The mortgage was unauthorized and is void for usury. (*Roberts* v. *Cronk*, 94 App. Div. 175 ; *State* v. *Chambers*, 93 N. C. 600 ; *C. M. B. & B. Society* v. *Wyatt*, 59 Atl. Rep. 553 ; *Bank* v. *Alvord*, 31 N. Y. 473 ; *Douglas* v. *Kavanaugh*, 90 Fed. Rep. 373 ; *B. & I. B. Assn.* v. *Eklund*, 190 Ill. 257 ; *Myers* v. *Assn.*, 117 Mich. 392 ; *Sullivan* v. *Assn.*, 70 Miss. 94 ; *Post* v. *Assn.*, 97 Tenn. 408 ; *Arbuthnot* v. *Assn.*, 98 Mo. App. 382 ; *Bates* v. *Assn.*, 42 Ohio St. 655.) The consideration for the bond and mortgage and the promise of the

defendants to pay premium and interest was the under-
taking on the part of the company that it would advance
money necessary, protect the member against the calling or
foreclosure of the underlying mortgage all the time until his
shares were matured, and, on or before the maturity of the
shares, pay off and satisfy the mortgages. On the failure of
the company and its becoming unable to carry out its con-
tract to protect the member against the enforcement of the
lien of the mortgages and to mature his stock, the considera-
tion for his undertaking failed, and he is entitled to such
equitable settlement as will return to him or credit on his
debt all moneys paid by him because of such contract, less
legal interest on money advanced and money paid out for
him. (*Harris* v. *Nevins,* 58 Atl. Rep. 1051; Addison's Law
of Contracts [10th Eng. ed.], 135, 906; *Archer* v. *McDonald,*
36 Hun, 194; *Brown* v. *Harris,* 2 Gray, 359; *Wheeler* v.
*Board,* 12 Johns. 363; Parsons on Contracts [9th ed.], 500;
*Claflin* v. *Godfrey,* 21 Pick. 1; *Chapman* v. *City of Brook-
lyn,* 40 N. Y. 372; *Fayette* v. *Ferrier,* 20 Wash. 479;
*Harmony* v. *Bingham,* 12 N. Y. 99; *Tompkins* v. *Dudley,*
25 N. Y. 272; *Dermott* v. *Jones,* 2 Wall. [U. S.] 1.)

*Charles W. Dayton* and *Joseph E. Bullen* for respondent.
The contract was legal and binding on the defendants. (*Gar-
vey* v. *N. Y. B. L. B. Co.,* 57 App. Div. 193; *Hall* v.
*Stowell,* 75 App. Div. 21; *Preston* v. *Brinley,* 106 App. Div.
593; *C. S. & A. Assn.* v. *Read,* 93 N. Y. 474; *People* v.
*Lowe,* 117 N. Y. 175; *E. S. & L. Co.* v. *Samuels,* 43 App.
Div. 386; *Hannon* v. *Cobb,* 49 App. Div. 480; *Breed* v.
*Ruoff,* 54 App. Div. 142; *Riggs* v. *Carter,* 77 App. Div.
580; 173 N. Y. 632; *Roberts* v. *Cronk,* 94 App. Div. 171;
182 N. Y. 456.) On the insolvency of the company the
defendant Walter S. Rockey became entitled to be relieved
from his contract, but did not become a creditor of the com-
pany with a right of action for breach of contract, or to be
treated as an ordinary borrower of money, and he is to be held
to full performance of his contract up to the time of the

appointment of the temporary receiver. (*Hannon* v. *Cobb*, 49 App. Div. 480; *Breed* v. *Ruoff*, 54 App. Div. 142; *Riggs* v. *Carter*, 77 App. Div. 580; 173 N. Y. 632; *Roberts* v. *Cronk*, 94 App. Div. 171; 182 N. Y. 456; *Preston* v. *Brinley*, 106 App. Div. 593.) The method of adjustment followed in this case does exact justice between the borrowing members and the other members, and is in strict accord with the authorities in this state. (*Riggs* v. *Carter*, 77 App. Div. 582; *Roberts* v. *Cronk*, 94 App. Div. 171.)

HISCOCK, J. The questions presented upon this appeal relate to the rights and obligations of a borrower upon bond and mortgage from a building and loan association which has become insolvent, such borrower being also a shareholder in said association. Their presentation has been occasioned by the decision of the Appellate Division affirming the action of the trial court charging the appellants with certain sums for fines, dues and interest, and refusing to credit them upon their indebtedness for actual advances with certain other sums paid by way of dues and interest upon premium charged upon the loan, and as interest on account of an underlying mortgage in excess of the rate said mortgage bore to the association.

Because this court has not, in any opinion, expressed its views upon some at least of these questions which are frequently arising, we have deemed it wise at this time in affirming the judgment appealed from so to do.

The New York Building-Loan Banking Company was organized under chapter 122, Laws of 1851. The appellant Rockey, being the owner of premises whereon there was an existing mortgage of $8,500, and desiring to procure money and also to retire said mortgage, applied for membership in said association and subscribed for 115 8/10 shares of Class A stock, the matured value of which at $100 per share would be equal to the amount conditioned and secured to be paid by the bond and mortgage thereafter executed to said association and of which foreclosure is herein being sought.

Said aggregate amount consisted of moneys actually advanced to the mortgagor, of the amount of said existing mortgage which said association bound itself to retire at or before the maturity of the shares of stock subscribed for by appellant, paying the interest in the meantime, and also of a premium, so called, upon said transaction of $1,930. Both by his application for membership and by said bond and mortgage said appellant bound himself each month to pay a certain sum as monthly dues or installments on his stock including the shares representing premium, and also interest at the rate of six per cent upon the amount secured by his bond and mortgage; also directly and indirectly taxes, insurance and fines for arrears of dues. The underlying bond and mortgage which made up part of the amount of the one executed by appellants bore interest at the rate of only five per cent. At various dates prior to September 12, 1903, Rockey defaulted upon various classes of payments. Upon said last-mentioned date plaintiff was appointed temporary receiver of said association.

The court below has charged appellants down to September 13, 1903, with arrears of interest at six per cent on the total amount of the bond and mortgage, with arrears of dues on shares including those representing the amount of the premium included in the bond and mortgage, and with fines for arrears of such dues. From and after said date it has charged them only with interest at six per cent upon the amount of cash actually advanced and with the interest at the rate of five per cent actually paid by said association upon the underlying mortgage. It has also charged them with certain amounts for taxes, insurance and interest thereon, over which there is no dispute. It has refused to credit them on account of the sums actually paid to them or advanced for their benefit, with any part of the dues or interest paid by or charged to them on account of Rockey's shares of stock, and especially those representing the premium item, or with any part of the excess of one per cent interest paid by or charged to them over and above the rate actually paid by the association upon the underlying mortgage, and this refusal, as already

intimated, constitutes in large measure the basis for the present appeal.

This court has already adopted the rule followed in this case, that where a savings and loan association becomes insolvent and passes into the hands of a receiver and is no longer able to carry out its contract with the borrowing shareholders, all of such borrowing shareholders should be relieved from their contracts with the association as of the date on which the receiver was appointed, and an equitable adjustment should then be made. (*Riggs* v. *Carter*, 173 N. Y. 632, affirming without opinion 77 App. Div. 580.)

In this case this rule has been construed as exempting the borrower from liability to pay any part of the premium reserved to the association after the date of the receivership, and this decision has not been challenged by the plaintiff.

The appellants contend for a still further application of this rule for an equitable adjustment. In substance, and briefly, it is urged that the relationship between the association and the borrower constituted an entire contract; that the premium included in the bond and mortgage was predicated upon the performance of such entire contract, which has failed, and that, therefore, appellants should be credited on account of their other and actual indebtedness with all the sums paid by way of dues and interest on shares representing said premium and for interest on account of the underlying mortgage in excess of that actually paid by the association, it not having completed its contract to retire said mortgage. This, of course, is a very brief summary of the extended and careful argument presented in behalf of the appellants upon this branch of the case, but it is the summary to which, in our opinion, a final analysis reduces that argument.

We may assume for the sake of the discussion that this argument would be convincing if the appellant Rockey occupied simply the position of an ordinary borrower and such relationship exclusively covered and determined the character of the payments which have been made, but such is not the case. The borrower also occupied the other position of a

shareholder in the association and as such he was subject to and bound by its purposes and policies as evidenced by the statute under which it was incorporated and its articles of association and by-laws, and this relationship must also be taken into account in determining the character and disposition of the payments made by him and sums charged to him.

An examination especially of the articles of association shows that the general scheme as relating to the class of shareholders which included appellant Rockey was to accumulate a fund to aid certain members, amongst other things, in removing incumbrances from their real estate, and to repay to other members who did not obtain advances the par value of their shares; that this fund was to be accumulated to the extent of maturing or making worth par the shares so held and that when the shares of a borrower thus matured or became worth par, they would be the medium of paying or discharging his bond and mortgage; that the accumulation of this fund and the maturity value of such shares was to be effected from monthly installments on shares "together with the profits from interest, premiums, fines, withdrawals, an equitable portion of any reserve or surplus fund or undivided profits, and all other profits accruing to each share." (Article 27, section 1.) Each share was to be charged with any and all amounts owing by the shareholder for fines, advances, interest, premiums, etc., and the profits apportioned at the end of each year were to be set aside and to constitute a fund known as the "Maturity Fund." The conditions and obligations of the bond and mortgage themselves contemplated the payment of certain sums towards the maturity of the borrower's shares of stock, which upon such maturity would secure the payment of his indebtedness.

Thus it appears quite clearly that the plan of the association which was binding upon the appellants contemplated that Mr. Rockey as a shareholder should make certain payments by way of premiums and interest which should be productive of profits to the association, and result in the accumulation of funds which would mature or make worth par the shares

of stock held by him and others, and which shares when so matured in the case of a borrower would be used to pay his indebtedness, and in the case of a non-borrower, to pay and retire his stock. It would almost seem fair to say that the controlling purpose and obligation which governed said appellant was to make payments into a fund which would mature stock, and that the question whether such stock when thus matured should be used to pay a bond and mortgage or not was an incidental and subordinate one. This purpose of the association and these obligations which rested upon the appellant while he was making the payments in question must certainly be taken into account in deciding the contention which is now made for the application of those payments. All of the shareholders of this class were interested in having this policy carried out, and so far as they occupied the position of borrowers it must be assumed that they were engaged in making similar payments for the purpose of accomplishing the accumulation and maturity of shares. Just as the premium payments which the appellant has made help swell this accumulation, so likewise it is to be presumed that such accumulation which tended towards the maturity of his stock and, therefore, towards the payment of his indebtedness has been aided by the payments of other shareholders. Certain rights and obligations were established between him and them with reference to the accumulation of this fund which governed the payments that he was making towards the same, and it seems to us quite plain that he cannot now have applied upon his indebtedness in the manner claimed by him said payments without violating his obligation to the other shareholders and withdrawing sums for his benefit from the general fund which has been accumulated for the benefit of all shareholders therein. We think that the sums paid by him and charged to him for dues and interest on account of premium before the insolvency cannot be credited as desired by him upon his bond and mortgage, but that he must get relief and credit therefor as a shareholder with other shareholders.

13

This court has affirmed without opinion the proposition that a borrowing shareholder can be compelled to pay all installments agreed to be paid for premiums down to the date of the receivership, and that he should not be credited with such payments upon the amount advanced upon his bond and mortgage. (*Riggs* v. *Carter*, 77 App. Div. 580; affirmed, 173 N. Y. 632; *Roberts* v. *Cronk*, 94 App. Div. 171; affirmed, 182 N. Y. 546.)

These decisions seem to adjudicate the disposition of the dues paid by or charges to appellant upon his premium shares and also by logical implication to deny the contention as to the interest paid upon the item of premium, for if the receiver of the association could properly collect and retain installments of premium he could collect and retain interest paid as a condition of deferring payment of the premium.

The course of reasoning which we have adopted covers, in a general way, the item of interest already referred to. In addition it may be said that appellant paid interest with the other items towards accumulating a fund which should mature his stock. The association undertook, at or before the date of such maturity, to pay up the underlying mortgage, and in the meantime to pay the interest thereon and carry it. There was no concealment from the borrower of the fact that the existing mortgage bore a less rate of interest than he agreed to pay, and if the association in performing its agreement with him could secure a lower rate of interest than it charged, the difference was an item of profit contemplated by its articles of association and by the shareholders who subscribed thereto. We do not overlook the fact that in *Hall* v. *Stowell* (75 App. Div. 21) a different end was reached and a similar excess of interest applied upon the actual indebtedness of the borrower. That decision, however, was rendered upon a submission of controversy upon an agreed statement of facts, and, so far as we can discover, without any discussion or opposition by the plaintiff.

It is urged that the bond and mortgage were infected with usury, but the refutation of this proposition seems to require but little consideration. The provisions of the statute under

which the association was incorporated expressly rendered fines, monthly payments and premiums innocuous under our statute prohibiting usury, and we do not see in the interest provisions of the contract any proof of usury.

We are told with much earnestness that the judgment appealed from works harsh and inequitable results, and is at variance with the decisions of other states and with the rules formulated by text writers. We think the latter statement, to some extent at least, is borne out by what has been decided and written upon the general subject now presented to us. However, the adjustment of rights between borrowers, shareholders and creditors of one of these insolvent associations is a perplexing subject upon which much may be said from different and conflicting standpoints. While we regard the authorities from other jurisdictions as entitled to much respect as a matter of argument, we still feel that the conclusion indicated by us is too well supported by a just consideration of all conflicting interests and by many well-considered decisions in this state to be now abandoned. So, too, while we appreciate that building and loan associations as a class have become the subject of much deserved criticism and disfavor, and while many of them have charged excessive prices for the benefits which they agreed to confer, and then through culpable mismanagement have often defaulted in fulfillment of what they promised, still that does not furnish any basis upon which we may overturn what seems to be the just construction of a legal contract. The remedy for such evils must necessarily rest with the legislature which created these associations and legalized their operations.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER and CHASE, JJ., concur; O'BRIEN, J., absent.

Judgment affirmed.